UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


CHARLES MERLIN PARFAIT, SR.                        CIVIL ACTION

v.                                                 NO. 19-11958

HUNTINGTON INGALLS INCORPORATED, ET AL.        SECTION "F"


<u>ORDER AND REASONS</u>


Before the Court is the plaintiff's motion to remand and his motion for Rule 11 sanctions. For the reasons that follow, the motion to remand is GRANTED and the motion for sanctions is DENIED.

**Background**

This litigation arises from Charles Merlin Parfait Sr.'s claim that he contracted mesothelioma due in part to asbestos exposure during his employment at Avondale Shipyards.

On April 1, 2019, Mr. Parfait sued various defendants in state court in Orleans Parish seeking to recover damages associated with malignant mesothelioma.[1] He alleges that he contracted this terminal disease due, in part, to direct asbestos exposure at

---

[1] He sued various defendants involved in the manufacture, distribution, and sale of asbestos-containing products, defendants that employed him between 1968 and 1978 when he worked at Avondale Shipyard, and he also sued insurance companies that provided coverage to defendants and their employees for asbestos-related claims.

Avondale Shipyards "during his employment at the Main Yard from approximately 1968 through 1978."[2]  As to occupational asbestos dust exposure at Avondale, Mr. Parfait specifically limits his cause of action to "only negligent failure to adopt adequate asbestos safety measures that would have prevented the injuries upon which this Petition is based."  Mr. Parfait alleges strict liability claims against additional other defendants, but he specifically disclaims any strict liability claims against Avondale.  Mr. Parfait alleges at paragraph 17 of his state court petition: "The defective condition of defendants' products, including but not limited to those aboard **destroyer escorts at Avondale**, are a proximate cause of Petitioner's injuries complained of herein." (emphasis added).

On July 2, 2019, Mr. Parfait was deposed.  Consistent with the allegations in his petition, he testified that he worked at Avondale from 1968 to 1978.  From 1968 to 1972, he testified, he worked as a sheet metal helper.  From January 25, 1971 until January 14, 1972, he worked on destroyer escorts being constructed for the United States Navy.  While working on the destroyer

_____

[2] In addition to occupational exposure, Mr. Parfait alleges other sources of asbestos exposure: "[t]he activities of Burmaster Land with asbestos-containing materials at or around his home in Marrero, Louisiana in the 1950s and 1960s" as well as "[a]sbestos brought home on the work clothes of his father, Joseph Wilson, from Todd Shipyard during [Parfait's] childhood."

escorts, he testified, he worked alongside insulators mixing cement and insulating pipe and that the insulators' work created dust.

Less than 30 days after Mr. Parfait's deposition was taken, on July 31, 2019, Huntington Ingalls Incorporated (f/k/a Northrop Grumman Shipbuilding, Inc., f/k/a Northrop Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc., and f/k/a Avondale Shipyards, Inc.), Albert L. Bossier, Jr., and Lamorak Insurance Company (collectively, "Avondale Interests") removed the lawsuit to this Court, invoking the Court's subject matter jurisdiction predicated on the federal officer removal statute, 28 U.S.C. § 1442. The Avondale Interests allege in their removal notice:

> The Petition contains broad allegations of Plaintiff's exposure to asbestos, but provides no details as to where or how Plaintiff was exposed to asbestos at Avondale. More specifically, the Petition does not link Plaintiff's alleged asbestos exposure to any vessels Avondale built, refurbished or repaired for the United States Government.

The removing defendants submit that Mr. Parfait's deposition testimony first placed them on notice that his occupational exposure to asbestos-containing materials being installed aboard United States Navy destroyer escorts, which were being built by Avondale under the supervision and control of officers of the United States, occurred during a specific time when the Navy required use of asbestos on destroyer escorts (that is, according

3

to the defendants, during a time right before the Navy phased out the use of asbestos).  Contending that removal was untimely and that the Court lacks subject matter jurisdiction under existing law, the plaintiff now moves to remand this lawsuit back to Civil District Court for the Parish of Orleans; he also moves for fees, costs, and sanctions based on improvident removal.

I.
A.

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by'" the United States Constitution and conferred by Congress.  <u>Gunn v. Minton</u>, 568 U.S. 251, 256 (2013)(citation omitted).  Unless Congress expressly provides otherwise, the general removal statute provides that a federal court may exercise removal jurisdiction over state court actions if the federal court would have original jurisdiction over the case -- that is, if the plaintiff could have brought the action in federal court from the outset. <u>See</u> 28 U.S.C. § 1441(a).[3]

As for the jurisdictional predicate for removal advanced by the defendants here, the federal officer removal statute, 28 U.S.C. § 1442(a)(1),[4] Congress has provided otherwise:  there is no

_____

[3] For example, a district court has original jurisdiction over cases presenting for resolution a federal question: "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.
[4] Section 1442(a)(1) provides:

4

requirement that the district court have original jurisdiction
over the plaintiff's claim when a defendant removes a case invoking
the federal officer removal provision.   Rather, § 1442(a)(1), "is
a pure jurisdictional statute in which the raising of a federal
question in the officer's removal petition...constitutes the
federal law under which the action against the federal officer
arises for [Article III] purposes."   Zeringue v. Crane Co., 846
F.3d 785, 789 (5th Cir. 2017)(quoting Mesa v. California, 489 U.S.
121, 136 (1989)).[5]   The purpose of this provision is to protect
the lawful activities of the federal government from undue state
interference.   Willingham v. Morgan, 395 U.S. 402, 406 (1969).

---

        A civil action or criminal prosecution that is commenced
        in a State court and that is against or directed to any
        of the following may be removed by them [to federal
        district court]:
        (1) The United States or any agency thereof or any
        officer (or any person acting under that officer) of the
        United States or of any agency thereof, in an official
        or individual capacity, for or relating to any act under
        color of such office.
[5] The well pleaded complaint rule does not preclude reliance on
the federal officer removal statute if a colorable federal defense
exists as to some claims and they otherwise meet the statute's
four criteria.   See Jefferson County, Ala. v. Acker, 527 U.S. 423,
431 (1999)("Under the federal officer removal statute, suits
against federal officers may be removed despite the nonfederal
cast of the complaint; the federal-question element is met if the
defense depends on federal law."); see also Zeringue, 846 F.3d at
789 (citations omitted)(the federal officer removal statute
"permits a federal defense, which is generally statutorily
impotent to establish subject matter jurisdiction, to serve as the
federal question that endues the court with jurisdiction.")

Remand is proper if the plaintiff timely identifies a procedural defect in removal; remand is mandated if at any time the Court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). Although the plaintiff challenges removal in this case, the removing defendants must establish that federal jurisdiction exists at the time of removal and that removal was procedurally proper. See Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002); see also Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 397 (5th Cir. 1998). Another feature distinguishing the federal officer removal statute from the general removal statute is that, unlike § 1441(a),[6] § 1442(a) must be liberally construed. See Watson v. Philip Morris Companies, Inc., 551 U.S. 142, 147 (2007)("The words 'acting under' are broad, and this Court has made clear that the statute must be 'liberally construed.'"); see also City of Walker v. Louisiana, 877 F.3d 563, 569 (5th Cir. 2017)("federal officer removal under 28 U.S.C. § 1442 is unlike other removal doctrines: it is not narrow or limited."). Thus, although it remains defendants' burden to establish the existence of federal jurisdiction, whether federal

_____

[6] Given the significant federalism concerns implicated by removal, the general removal statute is strictly construed "and any doubt about the propriety of removal must be resolved in favor of remand." Gutierrez v. Flores, 543 F.3d 248, 251 (5th Cir. 2008)(citation omitted); Gasch v. Hartford Accident & Indem. Co., 491 F.3d 278, 281-82 (5th Cir. 2007)(citations omitted).

officer removal jurisdiction exists must be assessed "without a thumb on the remand side of the scale." Savoie v. Huntington Ingalls, Inc., 817 F.3d 457, 462 (5th Cir. 2016)(citations omitted). This liberal construction afforded the federal officer removal statute is likewise afforded to determining whether a federal officer's removal is timely. See Morgan v. Huntington Ingalls, Inc., 879 F.3d 602, 607 and n.10 (5th Cir. 2018)(citing Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1253 (9th Cir. 2006)).

*B.*

Title 28 U.S.C. § 1442 authorizes removal to federal court of an action "against or directed to ... [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office[.]" 28 U.S.C. § 1442(a)(1). Although not in the statutory text, the case literature requires that the removing "officer must also allege 'a colorable federal defense' to satisfy Article III's 'arising under' requirement for subject matter jurisdiction." State v. Kleinert, 855 F.3d 305, 311 (5th Cir. 2017)(citing Mesa v. California, 489 U.S. 121, 129 (1989)(explaining that § 1442 is an exception to the usual "well-pleaded complaint" rule)). The statute's primary purposes are to

prevent hostile state courts from obstructing federal officers in the execution of their duties and to allow a federal court to determine the merits of immunity defenses. Winters v. Diamond Shamrock Chemical Co., 149 F.3d 387, 397 (5th Cir. 1998)(citing Willingham v. Morgan, 395 U.S. 402, 406-07 (1969)). Given these purposes and the differences between § 1441 and § 1442, courts are commanded by Congress and the Supreme Court to interpret § 1442 generously in favor of removal when federal officers and their agents seek a federal forum. See Arizona v. Manypenny, 451 U.S. 232, 242 (1981); see also Zeringue v. Crane Co., 846 F.3d 785, 789 (5th Cir. 2017)("[a]lthough the principle of limited federal court jurisdiction ordinarily compels [courts] to resolve any doubts about removal in favor of remand, ... courts have not applied that tiebreaker when it comes to the federal officer removal statute.")(citations omitted).

To remove under § 1442, the defendant must show that: (1) it is a "person" within the meaning of § 1442; (2) it "acted pursuant to a federal officer's directions and that a causal nexus exists between its actions under color of federal office and the plaintiff's claims[or charged conduct;]" and (3) it has asserted a "colorable federal defense." See Winters, 149 F.3d at 400; Sawyer v. Foster Wheeler LLC, 860 F.3d 249, 254 (4th Cir. 2017)(Or, in other words, the removing defendant must show that it is a

person that "acted under a federal officer, that it has a colorable federal defense, and that the charged conduct was carried out for or in relation to the asserted official authority.")(internal citations, quotations omitted).

Asbestos exposure litigation pervades the federal officer removal case literature landscape and singularly informs whether the causal nexus requirement might be satisfied in this case. See, e.g., Melancon v. Lamorak Ins. Co., 742 Fed. Appx. 833, 834 (5th Cir. 2018). The scope of the causal nexus component of federal officer removal is the most contentious and the most uncertain element in the present case literature landscape. It focuses on the connection between the actions taken under federal control and the plaintiffs' charged conduct; under existing law in the Fifth Circuit, the element is not met when the plaintiff restricts his claims to negligence and the challenged acts of the defendant are "free of federal interference." See Savoie v. Huntington Ingalls, Inc., 817 F.3d 457, 463 (5th Cir. 2016).

Put simply, in the Fifth Circuit, the causal nexus element in these cases is met when a plaintiff seeks to recover from a government contractor on a theory of strict liability but is absent when the theory of recovery is restricted to negligence.[7] "For

_____

[7] Courts have upheld federal officer removal when private companies remove cases involving claims for injuries arising from equipment

strict liability claims that 'rest on the mere use of asbestos,'
a causal nexus is established because 'the government obligates
the defendant to use the allegedly defective product that causes
the plaintiff's harm.'"  <u>Melancon</u>, 742 Fed. Appx. at 834. But
asbestos claims alleging "negligent failure to warn, train, or
implement safety procedures do not give rise to federal
jurisdiction when unrebutted evidence shows that the government
did nothing to direct the shipyard's safety practices." <u>Templet</u>
<u>v. Huntington Ingalls, Inc.</u>, 720 Fed. Appx. 726, 726-27 (5th Cir.
2018).

It is undisputed that the 2011 amendment to the federal
officer removal statute ostensibly replaced the causal nexus test
with a less restrictive test.  Before 2011, the statute permitted
removal by a federal officer who is sued "for any act under color
of such office."  Congress amended the statute in 2011 to permit
removal by an officer in suits "for or relating to any act under
color of such office."  28 U.S.C. § 1442(a)(1). The Fifth Circuit's
ostensible failure to fully implement this amended language in its
case literature has been called into question and is presently on
shaky ground.

---

manufactured for the government pursuant to government
specifications.  But it depends on the claim alleged.

Recently, in March 2019, a panel of the Fifth Circuit acknowledged a dichotomy in its federal officer jurisdiction case literature, after the federal officer statute was amended in 2011; Judge Jones writing for the panel majority criticized the viability of the "causal nexus" element the court has continued to endorse even after § 1442 was amended. See Latiolais v. Huntington Ingalls, Inc., 918 F.3d 406 (5th Cir. 2019). There, Judge Jones wrote that the 2011 amendment to Section 1442(a)(1) "broaden[ed] the basis for removal to federal court of claims brought against officers or agents of the federal government and those working under its direction[;]" but, the majority also acknowledged that the Fifth Circuit case literature, post-amendment, continued to apply the causal nexus test articulated for the prior iteration of the statute.[8] See id. (noting that the Fifth Circuit is "out of step with Congress and our sister circuits, and noting other circuits have read the 2011 amendments to eliminate the old "causal

<hr>

[8] The amendment had no bearing on the analysis in Bartel. Although in Zeringue the court noted that the 2011 amendment broadened the scope of the causal nexus requirement, the panel explicitly reaffirmed Bartel. Zeringue distinguished Bartel's negligence claims from Zeringue's strict liability claims, the latter justifying removal. Later, the court directly addressed the contention that Bartel had incorrectly applied pre-2011 precedent to the post-amendment case. Legendre v. Huntington Ingalls, Inc., 885 F.3d 398, 403 (5th Cir. 2018). Nevertheless, the court applied the rule of orderliness, which precluded it from re-examining Bartel. Id.

nexus requirement.").[9]  Specifically, in <u>Bartel v. Alcoa S.S. Co., Inc.</u>, 805 F.3d 169, 172 (5th Cir. 2015), the Fifth Circuit panel quoted the newly-amended statute, but adopted the same causal nexus test that pre-dates the new statute; the same causal nexus test in which "mere federal involvement does not satisfy the causal nexus requirement; instead, the defendant must show that its actions taken pursuant to the government's direction or control caused the plaintiff's specific injuries."  <u>See</u> <u>Latiolais</u>, 918 F.3d at 409 (quoting <u>Savoie v. Huntington Ingalls, Inc.</u>, 817 F.3d 457, 462 (5th Cir. 2016)).  <u>Latiolais</u> notes that, in <u>Zeringue</u> (a case decided after <u>Bartel</u> but before <u>Legendre</u>), the court "appeared to relax the causal nexus standard in light of the post-2011 'relating to' language, but reliance on that case is not appropriate."  <u>Id.</u>

---

[9] Latiolais was a machinist aboard a U.S. Navy ship who was exposed to asbestos while his ship underwent refurbishing; after he was diagnosed with mesothelioma, he sued Avondale, the civilian contractor that refurbished the Navy-owned ship. The contractor removed the lawsuit to federal court, and the district court granted the plaintiff's motion to remand.  The Fifth Circuit affirmed the district court's holding that removal under the federal officer removal statute was improper because the charged conduct, the failure to warn regarding asbestos, was private conduct that implicated no federal interests.  In so affirming, however, the majority noted that "Avondale's failure to warn about asbestos certainly 'relates to' its federal act of building the ships [and a]pplying the post-2011 statutory language would change the outcome of this appeal and would authorize the removal of many more cases than the causal nexus test permits."  <u>Id.</u> at 412.  The Avondale Interests here seek to be one of these "many more cases."

at 410 (noting that _Zeringue_ instructed that the causal nexus inquiry must be tailored to the facts of each case, and that _Zeringue_ ruled only on the propriety of removing a strict liability claim under the statute and specifically declined to consider a negligence-based failure to warn claim, whereas, "[b]efore _Zeringue_, however, in a case brought against Avondale[, _Savoie_,] this court had decided that claims for negligent exposure to asbestos could not be removed pursuant to _Bartel_."). Judge Jones writes in _Latioloais_, "[t]he cases that post-date the 2011 amendment to the federal officer removal statute all continue to cite _Bartel_, while drawing a distinction for removal purposes between claims for negligence (not removable) and strict liability (removable) pursuant to the causal nexus test." _Id._ at 410. Concluding the majority opinion, Judge Jones notes that "_Bartel_ should be reconsidered _en banc_ in order to align our precedent with the statute's evolution." _Id._ at 412. Her plea was heard. On May 8, 2019, the Fifth Circuit granted Huntington Ingalls' petition for rehearing _en banc_; _Latiolais v. Huntington Ingalls, Inc._ will be reheard by the full court on September 24, 2019.

## II.
### *A.*

Mr. Parfait moves to remand, contending that removal was patently defective both procedurally and substantively. The

13

Avondale Interests counter that they removed the lawsuit when it became unequivocally clear from the receipt of "other paper" that the plaintiff was exposed to asbestos on a federal vessel when the federal government required the use of asbestos on those vessels. They also contend that removal was substantively proper because the Latiolais majority stated that the prior Fifth Circuit rulings upon which the plaintiff relies are erroneous, the amended "relating to" language that is now before the Fifth Circuit *en banc* is at the heart of this removal and is dispositive of the causal nexus analysis in this case.

The Court first considers the plaintiff's threshold challenge to the timeliness of removal under 28 U.S.C. § 1446. The plaintiff contends that the operative document triggering the removal clock is the state court petition, which was filed on April 1, 2019 and served on the defendants no later than April 26, 2019. The defendants counter that the initial petition lacked specificity as to when the plaintiff was exposed to asbestos on destroyer escorts, but that the plaintiff's testified in his deposition precisely when he was exposed to asbestos in the early 1970s while aboard federal vessels at Avondale. This certitude, the defendants urge, for the first time opened the removal window and, thus, removal is timely. The Court disagrees.

28 U.S.C. § 1446 governs removal procedure. Subsection (b) pertains to documents that trigger the 30-day time limit for removal; it essentially provides a two-part test for determining whether a defendant timely removed depending on what sort of document triggered removal. Bosky v. Kroger Texas, LP, 288 F.3d 208, 209 (5th Cir. 2002); Decatur Hosp. Authority v. Aetna Health, Inc., 854 F.3d 292, 297 (5th Cir. 2017)(citation omitted). 1) If the "initial pleading *setting forth* the claim for relief upon which such action or proceeding is based" is removable, then the defendant must file its notice of removal within 30 days from receipt of that initial pleading. 28 U.S.C. § 1446(b)(1)(emphasis added). This initial 30-day clock is triggered "only when that pleading *affirmatively reveals on its face* that" the plaintiff is asserting a cause of action based on federal law. See Bosky, 288 F.3d at 210 (citations omitted, emphasis in original); see also Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir. 1994)(citing Aaron v. National Union Fire Ins. Co., 876 F.2d 1157, 1160-61 (5th Cir. 1989)(An initial pleading sets forth a removable claim "when [it] reveals on its face that it contains an issue of federal law.")). 2) But, if the initial pleading does not set forth a removable claim, the defendant must file its notice of removal within 30 days after it receives "a copy of an amended pleading, motion, order or" some "other paper from which it *may*

15

*first be ascertained* that the case is one which is has become removable."   28 U.S.C. § 1446(b)(3)(emphasis added).

To start the clock under this "other paper" paragraph, the information supporting removal contained in the other paper must state an even clearer case for federal jurisdiction than that required of the complaint; it "must be '*unequivocally clear and certain*[.]'"  See Bosky, 288 F.3d at 211 (describing this "bright-line" rule as one that should "discourage removals before their factual basis can be proven by a preponderance of the evidence through a simple and short statement of the facts.").  Like Bosky, the Court finds the comparison between the first and second paragraphs of § 1446 instructive:

> "Setting forth," the key language of the first paragraph, encompasses a broader range of information that can trigger a time limit based on notice than would "ascertained," the pivotal term in the second paragraph. To "set forth" means to "publish" or "to give an account or statement of."  "Ascertain" means "to make certain, exact, or precise" or "to find out or learn with certainty."  The latter, in contrast to the former, seems to require a greater level of certainty or that the facts supporting removability be stated unequivocally.

Bosky, 288 F.3d at 211 (citations, footnotes omitted).

### *B.*

Removal in this case is timely only if the facts forming the federal officer theory on which defendants predicate removal jurisdiction were not set forth until Mr. Parfait's deposition was

taken on July 2, 2019.[10]  If, instead, the allegations of the state court petition set forth or "affirmatively revealed on its face" the federal officer ingredients, then removal was procedurally defective and the case must be remanded.

When did the plaintiff disclose facts sufficient to trigger federal officer removal?  The procedural defect dispute focuses on whether the plaintiff's allegations concerning where and when he was exposed to asbestos at Avondale was set forth in the original petition such that removal based on the deposition transcript was simply of no juridical effect.  Consider the allegations in Mr. Parfait's state court petition, which was served on defendants no later than April 26, 2019:

> Petitioner was exposed to injurious levels of asbestos fibers and dust from the following sources:
>
> a.  Avondale Shipyards during his employment at the Main Yard from approximately 1968 through 1978;
> ...

_____

[10] There is no dispute that deposition transcripts constitute "other paper" for the purposes of § 1446(b)(3).  <u>Morgan v. Huntington Ingalls, Inc.</u>, 879 F.3d 602 (5th Cir. 2018); <u>S.W.S. Erectors, Inc. v. Infax, Inc.</u>, 72 F.3d 489, 494 (5th Cir. 1996). Where a defendant removes a case based on facts learned through deposition testimony, the 30-day removal clock starts to run upon the receipt of the transcript of deposition testimony that alerted the defendant that the case was removable.  <u>Morgan</u>, 879 F.3d at 612.  Although the parties do not focus on when Mr. Parfait's transcript was received, it was indisputably sometime after the July 2, 2019 deposition and before the defendants filed their notice of removal on July 31, 2019: an excerpt of the deposition transcript is included as an exhibit to the removal notice.

> As a direct and proximate result of having inhaled, ingested, or otherwise been exposed to asbestos..., Petitioner contracted malignant mesothelioma, an incurable and terminal cancer caused from asbestos exposure.
>
> ...
>
> Relative to the asbestos dust exposures from Avondale Shipyards, Petitioner alleges against Avondale and the Avondale Executive Officers only negligent failure to adopt adequate asbestos safety measures that would have prevented the injuries upon which this Petition is based.
>
> ...
>
> The defective condition of defendants' products, including but not limited to those aboard destroyer escorts at Avondale, are a proximate cause of Petitioner's injuries complained of herein.
>
> ...
>
> Petitioners assert causes of action in negligence for the failure to warn Petitioner of any health hazards associated with asbestos fiber and dust exposure.

...

Mr. Parfait sets forth the ingredients for a removable claim: he was exposed to asbestos fibers and dust while working at Avondale aboard "destroyer escorts," which are indisputably federal vessels.[11] The Avondale Interests concede that Mr. Parfait alleges that he was employed by Avondale Interests from 1968 to 1978.[12]

---

[11] Notably, the defendants themselves concede that destroyer escorts are Navy vessels and they use the phrase interchangeably with "Federal Vessels." The defendants do not suggest that there are some other types of destroyer escorts that could have been under contract by some private party.

[12] This particular concession appears at least inconsistent with the allegation contained in their removal notice that:

> The Petition contains broad allegations of Plaintiff's exposure to asbestos, but provides no details as to where

Nevertheless, the Avondale Interests attempt to gloss over these unequivocal allegations by suggesting that they could not discern whether Mr. Parfait worked aboard a destroyer escort at a time when the Navy mandated use of asbestos. Elaborating, the Avondale Interests submit that Mr. Parfait's specified decade of alleged employment is overinclusive insofar as the decade spans a time period in which their expert opines that the Navy required the use of asbestos on destroyer escorts (before mid-1974) and then no longer required the use of asbestos (after mid-1974). It follows, the defendants argue, that they could not ascertain whether Mr. Parfait's alleged exposure aboard destroyer escorts was perhaps restricted to after mid-1974, in which case according to their expert Mr. Parfait's claims would not have "related to" acts under color of federal office. This argument betrays the simple requirements of § 1446 and is not supported by the case literature.[13]

---

or how the plaintiff was exposed to asbestos at Avondale. More specifically, the Petition does not link Plaintiff's alleged asbestos exposure to any vessels Avondale built, refurbished or repaired for the United States Government.

[13] Cf. Loupe v. Pennsylvania Gen. Ins. Co., No. 16-6075, 2016 WL 6803531, at *5 (E.D. La. Nov. 17, 2016)(Vance, J.)(finding removal of asbestos litigation untimely and rejecting a first-hand knowledge requirement in determining whether "other paper" reveals federal officer removal grounds).

Even indulging the defendants' argument and expert, it is undisputed that Mr. Parfait alleged in his state court petition that he was exposed to asbestos while aboard destroyer escorts while working for Avondale spanning a time when (the Avondale Interests' expert opines that) the Navy required use of asbestos. Under the circumstances, the Court finds that the first paragraph of § 1446(b) does not insist on the level of certainty Avondale Interests would suggest.[14]  Mr. Parfait expressly alleged that he was exposed to asbestos while aboard destroyer escorts from 1968 to 1978, which the defendants concede spans a time during which the Navy mandated the use of asbestos.  Mr. Parfait's express allegations thus contain the requisite federal ingredients to set forth a removable claim and start the removal clock.  The certitude advocated by the Avondale Interests to trigger removal from an original pleading finds no support in the case literature, which

---

[14] To be sure, the Avondale Interests and other defendants in asbestos litigation have removed cases once it is determined (as it was plainly stated in Mr. Parfait's state court petition) that the plaintiff alleging asbestos exposure at the shipyard connected his exposure to a federal vessel.  The timing of the Avondale Interest's removal appears anchored more towards the potential for a favorable outcome on their asserted substantive ground for removal (given the Fifth Circuit's decision to rehear *en banc* the Latiolais case) than due to their concern that Mr. Parfait's employment records (which were indisputably already in the defendants' possession) might bear out that Mr. Parfait worked for Avondale aboard destroyer escorts after mid-1974.

requires only that an original pleading "set forth" or "affirmatively reveal on its face" facts supporting removal.[15]

The Court finds that the state court petition affirmatively disclosed on its face the ingredients for federal officer removal and, therefore, receipt of the state court petition started the 30-day removal clock. Because the state court petition was served on the defendants more than three months before removal, the Avondale Interests' notice of removal is untimely and the case shall be remanded to Civil District Court for Orleans Parish.

*C.*

Having determined that removal was untimely, the Court need not resolve whether it has federal officer removal jurisdiction. Even if removal was timely, however, today, the defendants' substantive removal theory fails as a matter of law under binding Fifth Circuit precedent for failure to demonstrate causal nexus.[16]

---

[15] The defendants focus on Mr. Parfait's confirmation in his deposition testimony that he worked aboard destroyer escorts in 1971. This specification or elaboration of the facts of his exposure, the defendants urge, for the first time opened the removal window and, thus, removal is timely. The Court disagrees. The plaintiff's deposition testimony confirmed rather than changed the facts already alleged when the defendants were served with his state court petition. Insofar as the plaintiff insists that the defendants had in their possession Mr. Parfait's employment records regarding when precisely he worked aboard destroyer escorts at Avondale, the Court need not resort to considering the removing defendants' subjective knowledge.

[16] There is no dispute that Mr. Parfait limits his cause of action against the Avondale Interests to negligence and disclaims strict

21

Although the removing defendants remain hopeful that the Fifth Circuit will permit removal of claims like Mr. Parfait's when they rehear _Latiolais_ _en banc_ in a few weeks, the Court is bound by Fifth Circuit precedent as it stands today.[17]

## III.

Finally, the plaintiff moves for costs and fees incurred due to improvident removal under § 1447(c) and moves for sanctions under Rule 11 of the Federal Rules of Civil Procedure.

---

liability claims and, thus, the removing defendants cannot demonstrate causal nexus.

[17] Even if the defendants persuaded the Court (which they do not attempt to do) that it should hold in abeyance this case pending rehearing _en banc_ in _Latiolais_, because the Court determines that removal was untimely, it would decline to do so. The Fifth Circuit recently declined to hold in abeyance a case presenting an issue to be addressed _en banc_ in _Latiolais_:

> We recently granted rehearing in a case that challenges the causal nexus requirement, arguing that we should adopt the "broader" test employed by our sister circuits. See _Latiolais v. Huntington Ingalls, Inc._, 918 F.3d 406, 412-13 (5th Cir. 2019), reh'g en banc granted, 923 F.3d 427 (5th Cir. 2019). Following the 2011 amendments to the federal officer removal statute, "[t]he Third and Fourth Circuits shifted their jurisprudence away from the causal nexus test and now require only a 'connection' or 'association' ... between the act in question and the federal office." Id. [citations omitted]. [W]e conclude that Blue Cross satisfies the narrower causal nexus test. Accordingly, we see no reason to hold this case in abeyance pending _en banc_ rehearing in _Latiolais_.

_St. Charles Surgical Hospital, L.L.C. v. Louisiana Health Service & Indem. Co._, --- F.3d ---, 2019 WL 3822143, at *3 n.1 (5th Cir. Aug. 15, 2019).

The plaintiff has not persuaded the Court that an award of costs and fees is appropriate.[18] The Fifth Circuit's criticism of its own asbestos officer removal case literature, its upcoming rehearing *en banc*, and the liberal construction afforded federal officer removal satisfies the Court that the Avondale Interests did not seek removal for an improper purpose and that they advanced arguments in good faith. Even though the Avondale Interests' argument in support of its substantive ground for removal is meritless under existing Fifth Circuit law, it is not frivolous. The plaintiff's motion for fees and costs and motion for Rule 11 sanctions are denied for the same reasons. <u>See</u>, <u>e.g.</u>, <u>Loupe v. Pennsylvania Gen. Ins. Co.</u>, No. 16-6075, 2016 WL 6803531, at *5 (E.D. La. Nov. 17, 2016)(Vance, J.); <u>M, G, & B Servs., Inc. v.</u>

---

[18] It is the Fifth Circuit's order granting rehearing *en banc* on the causal nexus issue informing the Avondale Interests' substantive removal ground that could pave the Avondale Interests' way to a federal forum. Having found removal untimely, the upcoming rehearing seems to be the genuine reason the Avondale Interests removed the case when they did. In other words, as of April 2019 when this case was filed and they were served with process, the Avondale Interests faced a body of case literature stacked against its substantive removal argument for lack of causal nexus. But, once the *en banc* court agreed to rehear <u>Latiolais</u>, the removing defendants ostensibly saw a hopeful window and they conjured this timeliness theory based on Mr. Parfait's deposition testimony. Regardless, given the state of the law, the Court is not persuaded that sanctions are warranted.

Buras, No. 04-1509, 2004 WL 2029416, at *1 (E.D. La. Sept. 9, 2004)(Vance, J.).

Accordingly, for the foregoing reasons, IT IS ORDERED: that the plaintiff's motion to remand is GRANTED and the plaintiff's motion for Rule 11 sanctions and for costs and fees is DENIED. The case is hereby remanded to the Civil District Court for the Parish of Orleans.

New Orleans, Louisiana, September 11, 2019

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE